IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| ESSENCE WELCH, | ) | Case No. 4:20-cv-00235-SMR-HCA |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON DEFFENDANTS' MOTION |
| v. | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| DANIEL DEMPSEY, individually and in his | ) | |
| official capacity, DANA WINGERT, | ) | |
| individually and in his official capacity as | ) | |
| Chief of Police for Des Moines Police | ) | |
| Department, and the CITY OF DES | ) | |
| MOINES, | ) | |
| | ) | |
| Defendants. | | |

This matter is before the Court on a Motion for Summary Judgment by Defendants Daniel Dempsey, Dana Wingert, and the City of Des Moines. [ECF No. 21]. Plaintiff Essence Welch resists the Motion. [ECF No. 28]. Neither party has requested a hearing on the Motion and the Court finds it can be resolved without one.[1]

## I.     BACKGROUND

### A.  Factual Background

On May 30, 2020, Plaintiff Essence Welch participated in a protest in downtown Des Moines, Iowa precipitated by the murder of George Floyd at the hands of a Minneapolis police officer a few days prior. [ECF No. 26 ¶ 5]. Over the course of the night, Welch attended protests in a variety of locations throughout downtown, spanning from the Des Moines Police Department

---

[1] *See* LR 7(c).

headquarters to the Sculpture Garden.[2]   [ECF No. 21-2 at 35] (Essence Welch Depo.).   She attended these demonstrations with several people, including her sister Destani.  *Id.* at 34.

Eventually, the crowd gathered around the Historic Polk County Courthouse ("Historic Courthouse") near the corner of Cherry Street and Sixth Avenue.  Police dispatch recordings from this period of time indicate that protesters were starting to "go after" the building.  [ECF No. 21-2] (Police Dispatch Audio).  Police received calls from citizens claiming that some protesters were throwing rocks at the Historic Courthouse and broken glass can be heard on video footage recorded from news cameras present at this time.  *Id.* (Channel 13 Video at 0:15).  Video also depicts numerous people near the southeast corner of the building but it is unclear what exactly they are doing.  *Id.*  (Channel 8 Video at 0:18).  As the crowd around the Historic Courthouse grew larger, a report is heard over the police radio that an individual "just threw fire into the southwest corner of the courthouse."  *Id.* (Police Dispatch Audio).  Welch is seen on video around this time, occasionally near the courthouse but is not seen damaging any property.  *Id*. (Channel 8 Video at 2:20–2:40).  Rather, she is using her cellular phone to record the events.

Across the street from the Historic Courthouse, a line of law enforcement dressed in camouflage fatigues were lined up in front of the Criminal Courthouse.[3]   Numerous members of the crowd, including Welch, moved across the street, stood before the line of officers protecting the Criminal Courthouse, and began chanting.  *Id.* (Channel 8 Video at 6:38).  Welch stood on the edge of the police line and continued to record the crowd as they chanted and jeered the officers.  *Id.* (Channel 8 Video at 8:03).

---

[2] The Sculpture Garden is located at 1330 Grand Avenue in Des Moines, Iowa.

[3] The Criminal Courthouse is located at 110 Sixth Avenue in Des Moines, Iowa.

Officer Dempsey was located at the police station on East 1st Street at this time, as part of his assignment to the Metro S.T.A.R. team ("STAR team").[4]  [ECF No. 21-2 at 93] (Officer Daniel Dempsey Depo.).  Officers at the police station began to receive reports about the events at the Historic Courthouse which Officer Dempsey later testified that it sounded like the situation had begun to devolve into a "riot."  *Id.*  A short time later, Officer Dempsey along with other members of the STAR team were deployed to the Historic Courthouse to "help disperse the crowd."  *Id.* Officer Dempsey and the other officers were transported by a "Bearcat"[5] vehicle to the area.  *Id.* While the Bearcat was en route to the area, officers on the scene radioed to dispatch that some of the protesters were moving west on Cherry Street away from both of the courthouses.  [ECF No. 21-2] (Police Dispatch Audio).  Parts of the group continued to linger around the corner of the Criminal Courthouse when the Bearcat carrying Officer Dempsey arrived along Cherry Street.

Body camera video shows members of the STAR team evacuating the Bearcat and gathering behind the police skirmish line.  *Id.* (Officer Ryan Neumann Video at 12:08).  After exiting the vehicle, Officer Dempsey can be seen immediately making his way to the far side of the police line and deploying pepper spray at Welch and continuing to disperse the chemical after she fled.  *Id.*  (Welch Facebook Live Video at 8:20).

Welch was streaming the events on her phone via a Facebook Live video stream, where Officer Dempsey can be seen exiting the Bearcat, stepping around a group of officers standing behind the police line, and walking up to Welch and spraying her in the face.  *Id.* (Welch Facebook

---

[4] The Metro S.T.A.R. (Special Tactics and Response) team is an interagency law enforcement unit specially trained and equipped to respond to atypical law enforcement circumstances.  [ECF No. 21-2 at 180].

[5] A Bearcat is an armored vehicle used by law enforcement to respond to unique tactical situations.

Live Video at 8:40–8:45).   Officer Dempsey was at the scene of the Criminal Courthouse for approximately twelve seconds prior to using his pepper spray.[6]   *Id.*   He did not give any verbal warning before spraying Welch.   *Id.* at 101 (Officer Daniel Dempsey Depo.).

Welch immediately moved west on Cherry Street upon getting sprayed in the face but Officer Dempsey continued to spray other members of the group.   *Id.* (Officer Scott Newman Body Camera Video at 9:15–9:33).   After moving west on Cherry Street, Welch received treatment from a fellow protester.   *Id.* (Essence Welch Facebook Live Video at 12:10).   As they become relevant, other facts are discussed below.

### B.   Procedural Background

Welch filed this Complaint in the Iowa District Court for Polk County on July 7, 2020.   [ECF No. 1-1].   Defendants removed the case to this Court on July 29, 2020.   [ECF No. 1].   After expeditious and efficient discovery, Defendants filed this Motion for Summary Judgment on July 15, 2021, [ECF No. 21], and Plaintiff resisted the Motion on August 13, 2021.   [ECF No. 28].   Defendants filed a reply on August 25, 2021.   [ECF No. 31].

Welch brings four distinct claims in her seven-count Complaint.   Counts 1 and 2 are brought pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Iowa Constitution, alleging Officer Dempsey violated her protection against unreasonable seizures by using excessive force.   Counts 3 and 4 assert that Officer Dempsey pepper sprayed her as retaliation for her exercise of her constitutional rights under the First Amendment and Article I, Section 7 of the Iowa Constitution.   Counts 5 and 6 allege the Des Moines Police Department maintains unconstitutional policies, practices, and customs.   Both counts seek to hold Chief of

---

[6] The time can be determined from body camera footage of Officer Jeffrey Davis.   Officer Davis was riding in the Bearcat with the STAR team and exited the Bearcat directly behind Officer Dempsey.   [ECF No. 21-2] (Officer Jeffrey Davis Body Camera at 0:20).

Police Dana Wingert and the City of Des Moines liable for those violations under 42 U.S.C. § 1983 and Article I, Sections 6, 7, and 8 of the Iowa Constitution.  Count 7 brings a common law claim alleging Welch was a victim of assault and battery when Officer Dempsey used pepper spray on her.

## II.   ANALYSIS

### A.  Motion for Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Paulino v. Chartis Claims, Inc.*, 774 F.3d 1161, 1163 (8th Cir. 2014).  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)).

To preclude the entry of summary judgment, a plaintiff must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The evidence is viewed "in the light most favorable to the nonmoving party," which includes drawing all reasonable inferences in that party's favor. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541 (8th Cir. 2014)). But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  *Anderson*, 477 U.S. at 255.  "Generally, the issue of whether a particular intent existed is a question of fact for the jury." *Yellen v. Hake*, 437 F. Supp. 2d 941,

952 (S.D. Iowa 2006) (quoting *In re K-tel Intern., Inc. Sec. Litig.,* 300 F.3d 881, 894 (8th Cir. 2002)).

### B. *Defendants' Motion for Summary Judgment*

Defendants move for summary judgment on all counts.  They argue Welch cannot prevail on her claims for excessive force under either the United States Constitution or the Iowa Constitution.  They argue likewise for her claims for retaliation predicated on the exercise of her First Amendment rights or her rights under Article I, Section 7.  Finally, they move for summary judgment in their favor on Welch's claim for assault and battery.

Welch resists the Motion, asserting a dispute of material fact exists for Counts 1–4 and Count 7.[7]  She responds that Officer Dempsey is not entitled to qualified immunity and her remaining claims should proceed to trial. For the reasons discussed below, the Motion for Summary Judgment is GRANTED in part, and DENIED in part.

### 1.  Excessive Force

In Count 1, Plaintiff alleges that Officer Dempsey applied excessive force when he pepper sprayed her at the May 30, 2021 protest.  Officer Dempsey argues in his brief that Plaintiff cannot establish a seizure or even attempted seizure, so she cannot prevail under the Fourth Amendment. He moves to dismiss Count 1 on that basis.  Plaintiff insists that there is a jury question on whether Officer Dempsey intended to seize her and the force he used to do so was constitutionally excessive.

---

[7] In her resistance, Welch indicates she does not resist dismissal of the claims for supervisory and municipal liability against Chief of Police Dana Wingert and the City of Des Moines.  Accordingly, Defendants' Motion for Summary Judgment on Count 5 and Count 6 is GRANTED.

Establishing a Fourth Amendment violation requires Welch to "demonstrate a seizure occurred and the seizure was unreasonable." *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003). A seizure occurs when "a reasonable person" does not believe they are "free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Beyond an arrest, a seizure may occur where an "officer, by means of physical force or show of authority, terminates or restrains [an individual's] freedom of movement, through means intentionally implied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations and quotations omitted).

The United States Supreme Court has long held that use of force is subject to the Fourth Amendment's prohibition against unreasonable seizures. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Use of force will violate the Fourth Amendment if it is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). This must be judged from the perspective of a reasonable officer on the scene. *Id.* An unreasonable seizure claim based on excessive force requires that an officer used force "with an intent to restrain." *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) (emphasis omitted).

Officer Dempsey insists that he did not use pepper spray with the intent to seize Welch but rather to disperse her from the chaotic scene near the two courthouses. He points out that he continued to use the pepper spray on other protesters even after Welch had vacated the area and fled west on Cherry Street and made no further movements toward her to attempt to seize her or anyone else.

Welch disputes this version of events, asserting that Officer Dempsey did intend to seize her—or that a reasonable jury could find that he intended to seize her—but was just unable to arrest her. *See Torres*, 141 S. Ct. at 999 (holding that use of force with an intent to seize is a

seizure even if the subject does not submit and is not subdued).  She points out that, in his deposition, Officer Dempsey stated that it is unsafe to enter a crowd alone, so he did not pursue her or make any attempt to arrest Welch.  [ECF No. 21-2 at 101].  However, the very next question, Officer Dempsey was asked whether he had "any intent when you approached [Welch] to arrest her?"  *Id.*  He responded that his intent was "more of—was dispersing the crowd . . . but if she would have stayed, then yes she would have been arrested."  *Id.*

Officer Dempsey argues in his brief in support of summary judgment that the United States Court of Appeals for the Eighth Circuit's decision in *Quraishi v. St. Charles Cnty., Mo.*, 986 F.3d 831 (8th Cir. 2021) is squarely on point.  In *Quraishi*, the case entailed use of tear gas by law enforcement against reporters who were covering a protest.  *Id.* at 834.  As the reporters were setting up for a broadcast, police officers deployed the tear gas near them.  *Id.*  Even after finding no probable cause that the reporters were failing to disperse, the *Quraishi* Court found that the defendants there were entitled to qualified immunity because there was no precedent establishing that using tear-gas was a seizure.  *Id.* at 840.  Rather, "the reporters' freedom to move was not terminated or restricted.  They were dispersed."  *Id.* (citations omitted).

*Quraishi* controls here.  Viewing the evidence in a light most favorable to Plaintiff, there is no evidence of a seizure or an attempted seizure by Officer Dempsey.  His deposition testimony supports the conclusion that he intended to disperse Welch but not to seize her.  Despite his remark that he did not attempt to arrest her because the danger of entering a large crowd on his own, it is not material whether he had a subjective intent to arrest Welch.  *See Torres*, 141 S. Ct. at 998 ("[T]he appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to

restrain.") (emphasis in original).[8]  In short, there is no dispute of material fact whether Officer Dempsey intended to seize Welch on the night of May 30, 2021.  Without an intent to seize, a Fourth Amendment claim for unreasonable seizure cannot proceed, regardless of whether excessive force was used.

The same conclusion applies to Count 2 brought under Article I, Section 8 of the Iowa Constitution.  Iowa courts "generally 'interpret the scope and purpose of the Iowa Constitution's search and seizure provisions to track with federal interpretations of the Fourth Amendment' because of their nearly identical language."  *State v. Brown*, 930 N.W.2d 840, 847 (Iowa 2019) (quoting *State v. Christopher*, 757 N.W.2d 247, 249 (Iowa 2008)).  Neither party has apprised the Court of authority to support a contrary interpretation of the state constitutional analog.  Thus, Defendants' Motion for Summary Judgment on Counts 1 and 2 is GRANTED.

### 2.  Retaliation[9]

Welch asserts in Count III that Officer Dempsey used pepper spray against her as retaliation for her protest against discriminatory policing.  Defendants respond that no material

---

[8] Other district courts confronted with this nearly identical issue have also so held, in light of *Quraishi*. *See Dreith v. City of St. Louis*, No. 4:18CV1565 JCH, 2021 WL 4148324, at \*5–6 (E.D. Mo. Sept. 13, 2021) (finding use of pepper spray was not a seizure when plaintiff was not arrested and officer made no attempt to arrest plaintiff); *Molina v. City of St. Louis*, Case No. 4:17-CV-2498-AGF, 2021 WL 1222432, at \*10–11 (E.D. Mo. Mar. 31, 2021) (holding that use of pepper spray, without an intent to terminate an individual's freedom of movement, is not a seizure (citation omitted)).

[9] "[T]he Iowa Constitution generally imposes the same restrictions on the regulation of speech as does the federal constitution." *State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1997); *Cf. Des Moines Register & Tribune Co. v. Osmundson*, 248 N.W.2d 493, 498 (Iowa 1976) ("We believe the federal and state constitutional provisions [First Amendment and Article I, Section 7], which contain almost identical language, impose the same limitation on abridgement of freedom of the press."). Neither party has advanced an argument which distinguishes the Iowa constitution and the federal constitution; therefore, this analysis will apply for Counts 3 and 4.

fact exists for the claim because Welch was engaged in riotous activity at the time which threatened officer safety and government property and was therefore not a protected activity under the First Amendment.  Defendants concede that there was no probable cause to arrest Welch at the time Officer Dempsey pepper sprayed her, but contend that she "lost the protections of the First Amendment . . . by failing to remove herself from such a situation."  [ECF No. 21-3 at 11].

It is settled law that the First Amendment generally "prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  To prove retaliation for the exercise of her First Amendment rights, Welch must prove: (1) she was engaged in a protected activity; (2) Officer Dempsey took adverse action against her that would chill a person of ordinary firmness from continuing the activity; (3) the adverse action was motivated by the exercise of the protected activity; and (4) a lack of probable cause or arguable probable cause for the act.  *Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017).

The standard has significant tension among its elements.  For example, on the first element, criticism of government officials is "the very core of speech protected by the First Amendment." *Id.* (quoting *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002)).  Furthermore, "[t]he First Amendment 'protects a significant amount of verbal criticism and challenge directed at police officers.'"  *McMenomy*, 869 F.3d at 655 (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)).  However, on the third element, a government official's retaliatory motive must be a "substantial factor" or "but-for cause" of the adverse action.  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) ("It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." (emphasis in original)); *Cf. Hartman*, 547 U.S. at 256 ("[W]hen nonretaliatory grounds are in fact insufficient to provoke the adverse

consequences, we have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution.").

The first element, whether Welch was engaged in a protected activity, is met.  Welch and others in the crowd were in the downtown area to protest discriminatory policing.  The right to criticize and object to governmental policies, including the way those policies are executed, is at the heart of several of the First Amendment's protections.  The First Amendment prohibits abridgement of the freedom of speech; of the press; of the right to assemble; and of the right to petition for a redress of grievances.  U.S. Const. amend. I.  All of these provisions are aimed directly at the purpose of providing Americans with protections to express unpopular views, particularly when directed at the officials themselves.  There is little question that Welch was engaged in a protected activity at the time she was pepper sprayed by Officer Dempsey.

Officer Dempsey insists that Welch was violating Iowa law by rioting at the time, thus losing any protection for her activities that night.  Rioting is criminalized under Iowa Code § 723.1, which provides:

> A riot is three or more persons assembled together in a violent manner, to the disturbance of others, and with any use of unlawful force or violence by them or any of them against another person, or causing property damage. A person who willingly joins in or remains a part of a riot, knowing or having reasonable grounds to believe that it is such, commits a class "D" felony.

Iowa Code § 723.1.

Officer Dempsey claims the property damage that occurred across the street at the Historic Courthouse created a riot and entitled him to use force on Welch for her continuous presence near the scene of the damage.  His argument is unconvincing for several reasons.

First, the Iowa Supreme Court has held that "mere presence at the scene of a riot is not punishable." *Williams v. Osmundson*, 281 N.W.2d 622, 624 (Iowa 1979).  There is no evidence

-11-

that Welch participated in any of the property destruction; rather, she stood at the scene and filmed some of the acts with her phone.[10]  Second, viewing the evidence in the light most favorable to Welch, any potentially "riotous" activities had subsided by the time Officer Dempsey arrived at the Criminal Courthouse.  Much of the crowd had already migrated west on Cherry Street.  [ECF No. 21-2] (Channel 8 Video at 12:49; Welch Facebook Live Video at 7:00 to 7:34).  Third, it appears that Officer Dempsey was the sole officer to use pepper spray around this time.  And finally, the footage does not support Officer Dempsey's testimony that he saw objects thrown at officers in the short time he was on the scene.

There also appears to be no question that the second element of the test for retaliation, whether the adverse action would chill a person of ordinary firmness from continuing the activity, is satisfied.  *See Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003) (observing that "the ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment.").  "[T]he test is what a [person] of ordinary firmness would have done in reaction to [pepper spray]."  *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013).  Plainly, the purpose of pepper spray is to deter the individual on the receiving end from continuing the activity in which they are currently engaged.

The final two elements—the motivation of Officer Dempsey to use force on Welch and whether probable cause or arguable probable cause existed for his actions—are the closest

---

[10] Officer Dempsey notes in his brief in support that Welch knew the name of an individual partaking in the damage to the Historic Courthouse, who was later of convicted for doing so, and discouraged people on the scene from saying his name aloud because she was aware numerous people were recording his actions.  [ECF Nos. 21-2 at 39; 21-3 at 2].  The brief provides no explanation for how Officer Dempsey would be aware of her alleged statements since they occurred prior to his arrival on the scene.

questions.  Both inquiries are also linked.  Presence of probable cause or arguable probable cause will defeat a claim for retaliatory arrest.  *Nieves*, 139 S. Ct. at 1724.  Without any reasonable basis for probable cause, the motivation of Officer Bartlett would be much more indicative of a retaliatory motive than if the legal standard for a formal arrest were present.

Officer Dempsey's argument in support of summary judgment on this claim centers on the fact that Welch was nearby an area where other protesters destroyed property.  His contention is that he had probable cause or arguable probable cause to use force on Welch because she was standing on the flank of the officers' skirmish line "after a group of individuals had apparently taken part in property destruction of the courthouse across the street, as well as individuals throwing debris at officers."  [ECF No. 21-3 at 12].  Welch responds in her resistance by pointing out that Officer Dempsey did not arrest her, nor did he give any objective indication of his intent to arrest her, as the Court has already determined.[11]

The body camera footage from the incident is illustrative and persuasive on whether a reasonable jury could find Officer Dempsey had a retaliatory motive in using force on Welch. After the Bearcat transporting Officer Dempsey arrived at the Criminal Courthouse, only approximately 12–15 seconds elapsed before he deployed pepper spray on Welch.[12]  [ECF No. 21-2] (Officer Jeffrey Davis Body Camera at 0:19–0:31).  Despite his argument that riotous activity was occurring during his arrival, there is no evidence any other officer used pepper spray during

---

[11] Indeed, Officer Dempsey argues (at least as it pertains to Welch's Fourth Amendment claims) that he merely intended to "disperse" Welch and the rest of the crowd around the criminal courthouse.  [ECF No. 21-3 at 7] ("Officer Dempsey dispersed pepper spray in the direction of Ms. Welch.  However, Dempsey never made any attempt to restrain Welch's movement or take her into custody.").

[12] Plaintiff's statement of material facts states Officer Dempsey was on the scene for approximately 15 seconds before he sprayed Welch but the time period appears to be as brief as 12 seconds.  [ECF No. 26-1 ¶ 20].

this time period. It was Officer Dempsey, who had only been on the scene for seconds, who used pepper spray on Welch. He argues that officer safety motivated him to use pepper spray, [ECF No. 21-3 at 12], but body camera footage shows Officer Dempsey walking around a group of other officers standing together to deploy the chemical on Welch. If it is true that no other officer used pepper spray around the same time as Officer Dempsey, that fact, if anything, would undermine his argument that he was objectively justified in its use. Use of force by a single officer, who had been on the scene for seconds, suggests an improper motive—not an objective one. Notably, body camera footage from a trailing officer shows Officer Dempsey releasing what appears to be a "test spray" on a fixed object near the Bearcat immediately after arriving on the scene. [ECF No. 21-2] (Officer Jeffrey Davis Body Camera at 0:21).

In conclusion, it does not appear that Officer Dempsey's "motive is not so free from doubt as to justify taking it from the jury." *Quraishi*, 986 F.3d at 838. He deployed his pepper spray on Welch within seconds of arriving on the scene. There is no evidence any other officer used chemical dispersants at the same time. Most of the crowd had migrated west on Cherry Street and the property damage was not occurring at the time of his use of force. A reasonable jury could find that Welch's exercise of her First Amendment rights was the but-for cause of Officer Dempsey's use of force. Defendants' Motion for Summary Judgment on Count 3 and Count 4 is DENIED.[13]

---

[13] Officer Dempsey makes a passing reference that "at minimum" he is entitled to qualified immunity for this claim. However, it has long been "clearly established" that retaliation by government officials for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998).

3.   Assault and Battery

Finally, Welch claims in Count 7 that Officer Dempsey committed tortious assault and battery when he used his pepper spray on her.  He moves for summary judgment on the claim, asserting that an assault claim cannot lie because his pepper spraying of Welch came without warning, so the element of apprehension is not satisfied for an assault claim.  *See* Iowa Model Jury Instructions (Civil) 1900.2 (requiring a defendant to perform an act which is intended to "put another in fear of physical pain or injury").[14]

Officer Dempsey further argues that his "intent was not to cause physical pain and injury, rather it was to disperse or move Ms. Welch from her position." [ECF No. 21-3 at 17].  However, he later acknowledges that "[o]f course, pepper spray is expected to cause discomfort to accomplish this dispersal otherwise it would not be used." *Id.*  Iowa courts have held "[a]ssault is but the initial stage of an act which is aggravated by a battery.  Stated otherwise a battery necessarily includes an assault, the latter inhering in the former." *State v. Redmon*, 244 N.W.2d 792, 797 (Iowa 1976) (quoting *State v. Yanda*, 146 N.W.2d 255, 256 (Iowa 1966)).  Clearly, "causing physical pain" is the feature which makes pepper spray effective at dispersion.  Video from Welch's phone depicts Officer Dempsey approaching her, wearing a black helmet and shield, and spraying her directly in the face.  [ECF No. 21-2] (Welch Facebook Live Video at 8:40–8:45).  It cannot be said that Officer Dempsey had no intent to put Welch in fear of pain or physical injury, as a matter of law.  Defendants' Motion for Summary Judgment on Count 7 is DENIED.

---

[14] Assault is contrasted with battery which does not require a defendant to intend fear of physical pain or injury.  Iowa Model Jury Instructions (Civil) at 1900.4.

III.    CONCLUSION

For the reasons discussed above, the Motion to Dismiss by Defendants is GRANTED in part, and DENIED in part.  [ECF No. 21].

IT IS SO ORDERED.

Dated this 4th day of November, 2021.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT